COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Petty and Senior Judge Bumgardner


CELIA W. WATT, SOMETIMES KNOWN AS
  CELIA WEEKS

                                                MEMORANDUM OPINION[*]
v.      Record No. 2446-05-4                    PER CURIAM
                                                MAY 23, 2006
FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Jonathan C. Thacher, Judge

            (Michael S. Arif; Martin & Arif, on brief), for appellant.

            (David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
            County Attorney; Dennis R. Bates, Senior Assistant County
            Attorney; Mario A. Bezzini, Guardian *ad litem* for the minor child,
            on brief), for appellee.


        Celia W. Watt, s/k/a Celia Weeks, appellant, contends the trial court erred in terminating

her parental rights to her minor child, "B." For the reasons stated herein, we summarily affirm

the trial court's decision. Rule 5A:27.

        On October 5, 2005, the circuit court entered an order terminating appellant's parental

rights pursuant to Code § 16.1-283(B), (C)(1), and (C)(2). Appellant argues that the Fairfax

County Department of Family Services ("DFS") failed to present clear and convincing evidence

that termination was appropriate under either Code § 16.1-283(B) or Code § 16.1-283(C)(2).

Appellant also argues that termination was not warranted because DFS failed to show it was in

B.'s best interests.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"Clear and convincing evidence that the termination [of residual parental rights] is in the child's best interests is a requirement in common to termination of parental rights under Code § 16.1-283(B), (C), . . . or (E)." Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 8 n.5, 614 S.E.2d 656, 659 n.5 (2005). While the best interests of the child is "the paramount consideration of a trial court" in a termination proceeding, Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991), terminations under Code § 16.1-283(B), (C), and (E) provide distinct, "individual bases upon which a petitioner may seek to terminate residual parental rights." City of Newport News v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003).

A termination under Code § 16.1-283(B) requires a finding that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.

Termination pursuant to Code § 16.1-283(C)(2) requires proof that the parent, "without good cause, has been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement," notwithstanding reasonable and appropriate efforts of services agencies.

Termination under Code § 16.1-283(C)(1) requires clear and convincing evidence that

> the parent . . . ha[s], without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.

While appellant argues generally that termination of her parental rights was not in B.'s best interests, she does not contest the sufficiency of the evidence supporting the circuit court's decision under Code § 16.1-283(C)(1). Therefore, should we find that termination was in the child's best interests, we need not address appellant's arguments regarding the sufficiency of the evidence under the other two statutory provisions. See Fields, 46 Va. App. at 8, 614 S.E.2d at 659.

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

On April 24, 2002, B. was treated for a broken leg and facial bruises, and placed in a full body cast. He was eleven months old. His treating physician reported these injuries, as well as an old, untreated broken arm, to DFS. B.'s maternal uncle, who had custody of him at the time, explained the injuries by stating that B.'s right leg "made a noise and went limp" while he was changing the child's diaper. B.'s father, Fred Watt, had placed B. in his uncle's care in Virginia while appellant was incarcerated in Texas on forgery charges from February 1 to April 30, 2002.

Appellant's incarceration in Texas resulted from a parole violation which occurred when she was arrested for shoplifting in Delaware in January 2002. At the time she was apprehended, she had left B. and his half-sister in the car with the motor running. In addition to the shoplifting charge, she was arrested for child endangerment, possession of drug paraphernalia, and possession of a non-narcotic substance.

DFS filed a petition alleging that B. was an abused and neglected child, and DFS obtained temporary custody. In May 2002, DFS filed a foster care plan with an initial goal of return home. The plan required appellant to obtain adequate housing, maintain stable employment, participate in a psychological and parenting skills assessment, and maintain contact with B.

Between June and August 2002, DFS requested that Delaware authorities perform a home study in preparation for B.'s return to his parents. At that time, placement with appellant was denied due to "criminal background findings," including the fact that appellant remained on probation. In January 2003,[1] DFS requested a second home study, but appellant and Watt refused to make themselves available to meet with the evaluator or submit criminal background forms.[2] They also declined offers from DFS to assist them with housing and employment in Virginia.[3]

In May 2003, DFS changed the goal from return home to adoption. At that time, B. had been in foster care for over a year. Appellant had been ordered by the juvenile court in January 2003 to attend parenting classes, follow drug and alcohol treatment recommendations, and

---

[1] On January 9, 2003, the juvenile and domestic relations district court ("juvenile court") ordered appellant to attend parenting classes, follow drug and alcohol treatment recommendations, and participate in individual therapy.

[2] Appellant's husband had violated his probation in Texas, and did not want to cooperate in the completion of a criminal background investigation. Appellant and Watt were married in July 2003.

[3] Specifically, DFS

> talked to them about . . . considering moving into a shelter and also looking at some of the housing programs in the area. And also a referral was made to the skilled resource center for an employer . . . . [B]oth Ms. Watt and Mr. Watt gave it some thought, but they decided to live in Delaware. And . . . they did not follow up with the skilled resource center, regarding employment.

- 4 -

participate in individual therapy. At the time DFS changed its goal to adoption, appellant had completed the parenting classes, but had not continued the individual treatment recommended in her psychological evaluation and ordered by the juvenile court.

In February 2004, Watt turned himself in to Texas authorities to serve time on his probation violation. Delaware authorities scheduled a home visit with appellant the following May. While the case worker found appellant's mobile home to be "clean and appropriate," it lacked propane for heating or cooking, and had little food on hand. Appellant's landlord indicated he had not renewed her lease because the rent payments had been consistently late. Furthermore, a capias was issued on June 10, 2004, as a result of appellant's failure to pay fines on a prior traffic conviction. The home study recommended against B.'s placement with appellant, noting that the lease difficulties and the outstanding capias posed "a substantially high risk" for his subsequent removal.

On July 22, 2004, DFS filed a petition to terminate appellant's residual parental rights. The juvenile court granted the petition in November 2004. Appellant appealed to circuit court, but relocated to Texas in November 2004 to be closer to her husband and daughter, who was in her former husband's custody.

Subsequent to appellant's relocation to Texas, another home study was conducted in January 2005. This home study also recommended against placement with appellant. The study noted appellant was unemployed, had failed to provide a list of personal references, and had declined to provide DFS with a plan for B.'s care.

By the time of the termination hearing in June 2005, appellant had been arrested on drug charges and could not attend the hearing because she was incarcerated in Texas. B. was then four years old and had lived with the same foster parents since July 2002. When he was first placed in foster care, B.was only one year old and still in a full body cast. After the cast was

removed, he learned to walk again normally. DFS records indicate he "adjusted extremely well to the foster care placement," and describe him as a "healthy, cheerful, and intelligent child." His foster mother testified that she and her husband had discussed adoption with DFS and that B. considered his foster sister to be his natural sibling. None of B.'s relatives represented potential placements.

Based on the foregoing, we find that B.'s best interests were served by termination of appellant's parental rights. B. was placed in foster care because he was abused by a third party, but he remained in foster care for approximately two additional years because appellant refused to cooperate with DFS. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Not only was appellant uncooperative with DFS in its initial attempts to perform home studies, she refused to provide a plan for B.'s care upon her relocation to Texas, where she was unemployed and ultimately incarcerated. Thus, appellant's ability to assume responsibility for B. has remained uncertain for several years, while B. has thrived in the secure environment provided by his foster family. Based upon the evidence presented, we are unable to say that the trial court erred by finding termination was in B.'s best interests.

Accordingly, the trial court's decision is summarily affirmed.

Affirmed.